IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DEMETRICE CANNON, | ) | CASE NO. 1:16-cv-01849 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN MARY POTTER, | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

Petitioner Demetrice Cannon ("Petitioner" or "Cannon"), through counsel, filed this habeas corpus action pursuant to 28 U.S.C. § 2254 ("Petition"). Doc. 1. Cannon challenges the constitutionality of his convictions and sentences in *State of Ohio v. Demetrice Cannon*, Case Nos. CR-13-574884 (Cuyahoga County). Doc. 1.

In October 2013, following a bench trial, Cannon was found guilty of murder, with a firearm specification, and having weapons while under disability. Doc. 7-1, p. 9. The trial court sentenced Cannon to 15 years to life on the murder conviction, plus 3 years to be served prior to and consecutive to that sentence, for the firearm specification, and 1 year on the having weapons under disability conviction, consecutive to the 15 year to life sentence, for a total sentence of 19 years to life. Doc. 7-1, p. 10, Doc. 8-2, p. 188.

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2.

For the reasons set forth below, the undersigned recommends that the Court **DISMISS and/or DENY** Cannon's Petition (Doc. 1). Grounds One, Five, Six and Seven should be

1

dismissed.  Ground Two and Four should be dismissed and/or denied.  Ground Three should be denied.

## I.    Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual determinations are presumed correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*; *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009).  The Eighth District Ohio Court of Appeals summarized the facts underlying Cannon's convictions:

> {¶ 3} The facts presented at trial were as follows: in the early hours of May 2, 2013, Kenyahta Steel died as a result of being shot four times with a .40 caliber firearm near the intersection of East 38th Street and Longwood Road in Cleveland, Ohio. Earlier that evening, Steel and Cannon had been shooting dice that deteriorated into a heated argument. As Steel was leaving the scene in an automobile, Cannon jogged to pursue the car and flagged Steel down. Cannon again argued with Steel for several minutes and, ultimately, Cannon shot Steel three to four times, which was testified to by two eyewitnesses: Demarco Parker and Brittany Baker–Terrell, as well as the appellant.

> {¶ 4} After being Mirandized, when questioned by Cleveland police, Cannon initially claimed he was nowhere near the incident at the time of the shooting and did not even know Steel. After several witnesses at trial rebutted that assertion, Cannon claimed that he acted in self-defense, asserting that Steel shot at him first.

> {¶ 5} This claim was overwhelmingly rebutted by other evidence. Two eyewitnesses testified to seeing Cannon shoot Steel but not to seeing Steel shooting at Cannon. Steel suffered four gunshot wounds. Police found four identical .40 caliber shell casings near the scene of the crime. Steel did own a firearm, but several witnesses testified that Steel did not have a firearm on his person that evening.

> {¶ 6} The only evidence, aside from Cannon's testimony, that Steel had fired a weapon at Cannon was gunshot residue found on Steel's left hand. While this residue is consistent with having fired a gun with his left hand, it is also consistent with being shot near his left arm at a range of one to four feet and/or Steel grabbing his wounded leg with his left hand after being shot at close range, which two eyewitnesses testified to having seen.

2

*State v. Cannon*, 2014-Ohio-4801, 2014 WL 5499291, * 1 (Ohio Ct. App. Oct. 30, 2014), *see also* Doc. 7-1, pp. 90-91.

## II.    Procedural Background

### A.  State conviction

On June 18, 2013, a Cuyahoga County Grand Jury indicted Cannon on five counts in Case No. 574884-13-CR.  Doc. 7-1, p. 5.  The counts were as follows: Count 1 – aggravated murder in violation of O.R.C. § 2903.01(A), with firearm specifications; Count 2 – murder in violation of O.R.C. § 2903.02(B), with firearm specifications; Count 3 felonious assault in violation of O.R.C. § 2903.11(A)(1), with firearm specifications; Count 4 – felonious assault in violation of O.R.C. § 2903.11(A)(2); and Count 5 – having weapons under disability in violation of O.R.C. § 2923.13(A)(3).  Doc. 7-1, pp. 5-7.  On July 1, 2013, Cannon pleaded not guilty to the indictment.  Doc. 7-1, p. 8.

Following a bench trial, Cannon was found guilty of the lesser included offense of murder in Count 1, with a three-year firearm specification, and guilty of having weapons under disability in Count 5.  Doc. 7-1, p. 9; Doc. 8-2, pp. 171-172.  The trial court found Cannon not guilty of Counts 2, 3, and 4.  Doc. 7-1, p. 9; Doc. 8-1, p. 171.  On October 25, 2013, the trial court sentenced Cannon to 15 years to life on the murder conviction, plus 3 years to be served prior to and consecutive to that sentence for the firearm specification (Count 1) and 1 year on the having weapons under disability conviction (Count 5), consecutive to Count 1, for a total sentence of 19 years to life.  Doc. 7-1, p. 10, Doc. 8-2, p. 188.

**B.  Direct appeal**

On November 22, 2013, Cannon, through counsel, appealed to the Eighth District Court

of Appeals.   Doc. 7-1, pp. 11-16.  In his appellate brief filed on March 27, 2014, (Doc. 7-1, pp.

17-61, Cannon raised the following assignments of error:

1.    Defendant was denied a fair trial when the prosecutor argued that defendant was guilty because he failed to explain to the police his self-defense version.

2.    Defendant was denied a fair trial when the prosecutor cross-examined defendant concerning alleged statements made by a witness who did not testify.

3.    Defendant was denied effective assistance of counsel guaranteed by the Sixth Amendment.

4.    Defendant was denied due process of law when the court overruled his motions for judgment of acquittal.

5.    Defendant was entitled to a new trial as the judgment and verdict are against the manifest weight of the evidence.

6.    Defendant was denied due process of law when defendant received a consecutive sentence based on judicial factfinding.

7.    Defendant was subjected to unconstitutional multiple punishments when the court failed to merge the firearm specifications with the offense of having a weapon while under a disability.

Doc. 7-1, pp. 23, 35-59.  The State filed its appellate brief on May 15, 2014.  Doc. 7-1, pp. 62-

87.

On October 30, 2014, the Eighth District Court of Appeals affirmed in part and reversed

in part the judgment of the trial court.  Doc. 7-1, pp. 88-112.  The court of appeals sustained in

part Cannon's sixth assignment of error, finding that the trial court made the required findings to

support consecutive sentences at the sentencing hearing and the record supported those findings

4

but the trial court had not incorporated those findings into the sentencing entry.  Doc. 7-1, pp.

105-107, ¶¶ 45-47.  The court of appeals, therefore, remanded the case to the trial court for

issuance of a nunc pro tunc entry to incorporate its consecutive-sentencing findings into its

sentencing entry.  Doc. 7-1, p. 110, ¶ 62.  The court of appeals overruled Cannon's claim in his

sixth assignment of error that the trial court improperly engaged in judicial fact-finding regarding

his consecutive sentences in violation of the Sixth Amendment and overruled all other

assignments of error.  Doc. 7-1, pp. 88-112.

On November 10, 2014, a motion for reconsideration was filed in Cannon's court of

appeals case by Cannon's counsel.  Doc. 7-1, pp. 113-119.  However, the motion for

reconsideration pertained to a defendant other than Cannon.  *See e.g.,* Doc. 7-1, p. 113 (different

caption and different court of appeal's case number).  On January 12, 2015, Cannon's counsel

filed a motion entitled "motion to accept corrected motion for reconsideration previously filed."

Doc. 7-1, pp. 120-130.  On January 21, 2015, the state filed a response to Cannon's motion to

accept a corrected motion for reconsideration, requesting that the court deny Cannon's motion.

Doc. 7-1, pp. 131-135.  On January 22, 2015, the court of appeals denied the motion for

reconsideration and the motion to accept corrected motion for reconsideration previously filed.

Doc. 7-1, pp. 136-137.

On March 2, 2015, Cannon, through counsel, filed a notice of appeal with the Supreme

Court of Ohio.  Doc. 7-1, pp. 138-139.  In his memorandum in support of jurisdiction (Doc. 7-1,

pp. 140-184), Cannon presented the following propositions of law:

1.  A defendant has been denied a fair trial when the prosecutor argues
     that the defendant was guilty because he had failed to explain self-
     defense to the police prior to trial.

2.  A defendant has been denied a fair trial when the prosecutor, on
     cross-examination of the defendant asks questions incorporating

alleged statements made by another witness who did not testify at trial.

3. A defendant has been denied effective assistance of counsel where errors and omissions by defense counsel deprived defendant of his Sixth Amendment right to effective assistance of counsel.

4. A defendant has been denied due process of law when the motions for judgment of acquittal was overruled.

5. A defendant is entitled to a new trial where the judgment and verdict are against the manifest weight of the evidence.

6. A defendant has been denied his Sixth Amendment rights where the defendant is sentenced to a consecutive sentences based on judicial factfinding.

7. A defendant has been subjected to unconstitutional multiple punishments when the court fails to merge the firearm specification with the offense of having a weapon while under a disability.

Doc. 7-1, pp. 148-159.  On March 20, 2015, the state filed its memorandum in response to jurisdiction.  Doc. 7-1, pp. 185-202.  On August 26, 2015, the Supreme Court of Ohio declined to accept jurisdiction of Cannon's appeal.  Doc. 7-1, p. 203.

### C.  Petition for post-conviction relief

During the pendency of his direct appeal, on May 16, 2014, Cannon, through counsel, filed a petition for post-conviction relief with the trial court.  Doc. 7-1, pp. 204-217, 453.  In his petition for post-conviction relief, Cannon argued that his trial counsel was ineffective for the following reasons:

1. Defense counsel failed to file a motion to suppress;

2. Counsel failed to object to hearsay evidence; and

3. Failure to object to prosecutorial misconduct.

Doc. 7-1, pp. 206-213.  On June 24, 2014, the state filed a brief in opposition to Cannon's petition for post-conviction relief.  Doc. 7-1, pp. 218-230.  In July 2014, the trial court issued

6

findings of fact and conclusions of law and overruled Cannon's post-conviction petition finding the petition barred by *res judicata*.[1]  Doc. 7-1, pp. 231-236.

On July 25, 2014, Cannon, through counsel, filed a notice of appeal from the trial court's dismissal of his petition for post-conviction relief.  Doc. 7-1, pp. 237-248.  On September 29, 2014, Cannon filed his appellate brief (Doc. 7-1, pp. 249-275) wherein he raised the following two assignments of error:

    1.      Defendant was denied due process of law when his post-conviction petition was dismissed without a hearing based on *res judicata*.

    2.      Defendant was denied due process of law when the court dismissed his petition for post-conviction relief without an evidentiary hearing.

Doc. 7-1, pp. 253, 256-268.  On November 19, 2014, the state filed its brief.  Doc. 7-1, pp. 276-289.  On April 23, 2015, the court of appeals affirmed the judgment of the trial court dismissing Cannon's petition for post-conviction relief.  Doc. 7-1, pp. 290-297.

On May 4, 2015, Cannon filed an application for reconsideration with the court of appeals requesting that it reconsider its April 23, 2015, decision.  Doc. 7-1, pp. 298-301.  On May 8, 2015, the court of appeals denied Cannon's application for reconsideration.  Doc. 7-1, p. 302.

On June 12, 2015, Cannon, through counsel, filed a notice of appeal with the Supreme Court of Ohio from the court of appeals' April 23, 2015, and May 8, 2015, decisions.  Doc. 7-1, pp. 303-304.  In Cannon's memorandum in support of jurisdiction filed contemporaneously with his notice of appeal (Doc. 7-1, pp. 305-331), Cannon presented the following two propositions of law:

---

[1] The findings of fact and conclusions of law are dated July 1, 2014.  Doc. 7-1, p. 236.  The journal entry overruling Cannon's petition is dated July 7, 2014.  Doc. 7-1, p. 231.

1.  A defendant has been denied due process of law when a post-conviction petition is dismissed by the trial court without a hearing based upon a misapplication of *res judicata*.

2.  Defendant has been denied due process of law when his post-conviction petition has been dismissed without an evidentiary hearing where petitioner has presented matters outside the record concerning ineffective assistance of counsel.

Doc. 7-1, pp. 306, 311-322. On June 24, 2015, the state filed a waiver of memorandum in response. Doc. 7-1, p. 332. On November 10, 2015, the Supreme Court of Ohio declined to accept jurisdiction of Cannon's appeal. Doc. 7-1, p. 333.

### D. Trial court *nunc pro tunc* resentencing

Pursuant to the court of appeals' remand order, on January 22, 2015, the trial court entered a *nunc pro tunc* entry to correct the sentencing entry to include the factual findings previously set forth by the trial court during the sentencing hearing. Doc. 7-1, pp. 334-335. Cannon's sentence remained 19 years to life. Doc. 7-1, p. 334. No appeal was taken from the trial court's January 22, 2015, *nunc pro tunc* entry.

### E. Motion for leave to file motion for new trial or petition for post-conviction relief

On February 13, 2015, Cannon, through counsel, filed a motion for leave to file a motion for new trial based on newly discovered evidence or, in the alternative, petition for post-conviction relief. Doc. 7-1, pp. 336-347. The alleged newly discovered information was an affidavit from witness DeMarco Parker, who had testified at trial as a state's witness, which indicated he had lied at trial about seeing Cannon shoot the victim. Doc. 7-1, pp. 336-337, 346. On April 30, 2015, the state filed an opposition to Cannon's motion for leave, arguing that the alleged newly discovered evidence did not exonerate Cannon because there was never a claim that Cannon did not shoot the victim; Cannon argued at trial that he shot in self-defense. Doc.

8

7-1, pp. 348-356.  On June 10, 2015, the trial court overruled Cannon's motion for leave.  Doc. 7-1, p. 357.

On July 27, 2015, Cannon, through counsel, filed an untimely notice of appeal from the trial court's decision overruling his motion for leave to file a motion for new trial.  Doc. 7-1, pp. 358-368.  On July 29, 2015, the court of appeals dismissed the appeal *sua sponte* for failure to file a timely notice of appeal.  Doc. 7-1, p. 465 (court of appeals, case number CA-15-103298 docket entries).  On August 7, 2015, Cannon filed a motion for reconsideration, which the court of appeals granted on September 3, 2015.  Doc. 7-1, p. 465 (court of appeals, case number CA-15-103298 docket entries).[2]   On September 25, 2015, Cannon filed his appellate brief (Doc. 7-1, pp. 370-385), asserting the following assignment of error:

1.  Defendant was denied due process of law when his motion for leave to file a motion for new trial based on newly discovered evidence was summarily overruled by the court.

Doc. 7-1, pp. 376-384.  On November 18, 2015, the state filed its brief.  Doc. 7-1, pp. 386-395. On May 26, 2016, the court of appeals overruled Cannon's assignment of error, (Doc. 7-1, pp. 396-405), finding that Cannon's "newly discovered evidence" would not change the outcome of the trial if a new trial had been granted and, therefore, the trial court did not abuse its discretion in denying Cannon's motion without an evidentiary hearing (Doc. 7-1, pp. 404-405).

On June 6, 2016, Cannon filed a motion for reconsideration with the court of appeals requesting that the court reconsider its May 26, 2016, ruling.  Doc. 7-1, pp. 406-411.  On June 22, 2016, the court of appeals denied Cannon's motion for reconsideration.  Doc. 7-1, pp. 412-414.

---

[2] There is a journal entry granting a motion for reconsideration included in state court records attached to Respondent's Return of Writ.  *See* Exhibit 36 (Doc. 7-1, p. 369).  It appears that that journal entry pertains to a criminal case unrelated to Cannon's case.

On July 25, 2016, Cannon filed a notice of appeal with the Supreme Court of Ohio from the court of appeals' May 26, 2016, and June 22, 2016, decisions.  Doc. 7-1, pp. 415-416.  In his memorandum in support of jurisdiction, (Doc. 7-1, pp. 417-441), Cannon presented the following proposition of law:

> 1.    A defendant has been denied due process of law when defendant presence [sic] new evidence which proves that the defendant is actually innocent and the court fails to grant any relief.

Doc. 7-1, pp. 418, 424-428.  The state filed a memorandum in opposition to jurisdiction on August 22, 2016.  Doc. 7-1, pp. 442-451.  On December 28, 2016, the Supreme Court of Ohio declined jurisdiction.  Doc. 7-1, p. 468 (Supreme Court of Ohio, case number 2016-1090 docket entry).

### F.  Federal habeas corpus

On July 22, 2016, Cannon, through counsel, filed his federal habeas petition.  Doc. 1.  On December 30, 2016, Respondent filed a Return of Writ and, on March 13, 2017, Cannon filed a Traverse.  Doc. 7, Doc. 10.  In his Petition, Cannon raises seven grounds for relief which are discussed below in Section III.C.

### III.    Law and Analysis

### A.  Standard of review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established law must be objectively unreasonable." *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)

11

(Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

### B.  Exhaustion and procedural default

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.[3]  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).  Further, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation

---

[3] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.  *McMeans,* 228 F.3d at 681.

requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Additionally, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.

First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."  *Id.*  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at

13

806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines

to reach the merits of the issue, and the state procedural rule is an independent and adequate

grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at

138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state

court, and pursue that claim through the state's 'ordinary appellate review procedures.'"

*Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also*

*Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and

every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see*

*also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of

appeals constituted a waiver).   "If, at the time of the federal habeas petition, state law no longer

allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Williams*, 460 F.3d

at 806.  While the exhaustion requirement is technically satisfied because there are no longer any

state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991),

the petitioner's failure to have the federal claims considered in the state courts constitutes a

procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual

prejudice that resulted from the alleged violation of federal law or that there will be a

fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

"'[C]ause' under the cause and prejudice test must be something external to the petitioner,

something that cannot be fairly attributed to him."  *Id.* at 753.  "[T]he existence of cause for a

procedural default must ordinarily turn on whether the prisoner can show that some objective

factor external to the defense impeded counsel's efforts to comply with the State's procedural

rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### C. Cannon's grounds for relief

#### 1. Ground One should be dismissed

**GROUND ONE: Sixth and Fourteenth Amendment[.]**

**Supporting Facts: Petitioner was denied a fair trial when the prosecutor argued to the court that petitioner was guilty of the offense because he had failed to explain a claim of self defense to the police prior to trial[.]**

Respondent contends that Ground One is subject to dismissal because Cannon procedurally defaulted the claim for federal habeas review by failing to raise a contemporaneous objection to the prosecutor's conduct at the first opportunity during trial.

Cannon contends that there was no procedural default of Ground One because the issue was raised on direct appeal and on further appeals based on ineffective assistance of counsel. Doc. 10, p. 6. However, as found by the state court of appeals, the default occurred at the trial. More particularly, the court of appeals stated "Cannon did not object to the testimony of Det. Raymond Diaz . . . Cannon's failure to object to the testimony of Diaz deprived the trial judge of any opportunity to rule on this issue. As a result, Cannon has waived all but plain error." Doc. 7-1, p. 92, ¶ 9. The court of appeals thereafter found no plain error. Doc. 7-1, pp. 92-95, ¶¶ 9-13.

Ohio's contemporaneous objection rule requires that a party preserve an error for appeal by calling it to the attention of the trial court at a time when the error could have been avoided or corrected. *State v. Mason*, 82 Ohio St. 3d 144, 162 (Ohio 1998); *State v. Glaros*, 170 Ohio St. 471 (Ohio 1960), paragraph one of the syllabus. In "exceptional circumstances," however, Ohio courts may examine a claim that is otherwise waived due to the violation of a procedural rule –

15

such as the contemporaneous objection rule – for "plain error," when "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St. 2d 91, 96, 97 (Ohio 1978); *see also* Ohio R. Crim. P. 52(B) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").  Failure to adhere to the "firmly-established" contemporaneous objection rule is "an independent and adequate state ground" upon which to find federal habeas claims procedurally defaulted.  *See, e.g., Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006).  And a court's "plain error review does not constitute a waiver of the state's procedural default rules and resurrect the issue . . . ." *Id.*  Thus, while the state court of appeals conducted a plain error rule, the claim is nonetheless procedurally defaulted unless Cannon can demonstrate cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered.  *Coleman*, 501 U.S. at 750.

Assuming the Court concludes that there was a procedural default of Ground One, Cannon argues that the default should be excused based on actual innocence.  Doc. 10, p. 2.  This "narrow exception" applies only where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense.  *Dretke v. Haley*, 541 U.S. 386, 392 (2004).  To demonstrate "actual innocence," a petitioner must show "'by clear and convincing evidence that, but for constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" *Id*. (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)).  The claim requires a showing of "new reliable evidence" and factual innocence, not mere legal insufficiency.  *See Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Bousley v. United States*, 523 U.S. 614, 623 (1998).

16

In support of his claim of actual innocence, Cannon points to the affidavit of DeMarco Parker submitted in connection with his motion for new trial.  Doc. 10, p. 2.  In that affidavit, Mr. Parker recanted his trial testimony, stating in the affidavit ". . . I never saw Demetrius Cannon shoot no one, and I did testify to a lie that they wanted me to say."  Doc. 7-1, p. 346. While this evidence may be new evidence, it does not serve to place this case within the "narrow exception" which applies only where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense.  Although Mr. DeMarco recanted his trial testimony and later stated that he did not see Cannon shoot the victim, Cannon himself admitted to shooting the victim.  Doc. 7-1, p. 403, ¶ 18.  Additionally, Mr. DeMarco does not state that he saw the victim shoot at Cannon first.  Considering the other evidence adduced at trial, Cannon's claim that Mr. DeMarco's evidence is "new reliable evidence" sufficient to establish actual innocence to excuse the procedural default of Ground One is without merit.

Although not clearly raised by Cannon as a basis to excuse his procedural default, to the extent that Cannon argues that ineffective assistance of trial counsel should serve as cause and prejudice to excuse his procedural default of Ground One, that claim fails.  In order to serve as cause to excuse a procedural default, "[n]ot just any deficiency in counsel's performance will do . . . the assistance must have been so ineffective as to violate the Federal Constitution."  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  Here, as discussed more fully below with respect to Ground Three, Cannon's claims of ineffective assistance of trial counsel are without merit and, therefore, cannot serve to excuse his procedural default of Ground One.  *Id.* ("[I]neffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim.") (emphasis in original).

17

For the reasons set forth herein, the undersigned recommends that the Court dismiss Ground One as procedurally defaulted.[4]

### 2. Ground Two should be dismissed and/or denied

**GROUND TWO: Fourteenth Amendment**

**Supporting Facts: Petitioner was denied a fair trial when the prosecutor, on cross examination of petitioner, asked the questions incorporated and statements made by another witness who had not testified at the trial.**

Respondent argues that Ground Two should be dismissed as not adequately presented because Ground Two lacks sufficient specificity.  Doc. 7, pp. 22-25.  In the event that the Court does not dismiss Ground Two for failure to plead with sufficient specificity, Respondent argues that, to the extent that Cannon seeks to raise the same issue that he raised in his second assignment of error in his state court direct appeal, Ground Two should be dismissed as not cognizable on federal habeas review because his claim is a challenge to the admission of evidence under state law.  Doc. 7, pp. 25-27.   Finally, Respondent argues that, to the extent that Cannon has raised a constitutional claim in Ground Two, the state court of appeals' decision denying relief for the alleged denial of a fair trial is entitled to deference under AEDPA.  Doc. 7, pp. 27-28.

In his Traverse, Cannon does not respond to Respondent's claim that Ground Two is not sufficiently pled to warrant consideration on the merits.  Instead, Cannon proceeds to his merits argument, arguing that he was denied a fair trial because the prosecutor was allowed to cross-examine Cannon concerning alleged statements made by an individual – Brandy Wyatt – who did not testify at trial.  Doc. 10, p. 8.

---

[4] Alternatively, Respondent argues that, even if not procedurally defaulted, Ground One should be denied on the merits.  Since Ground One is procedurally defaulted, the Court need not address Respondent's alternative merits argument.

While Ground Two, as presented in the Petition, provides sparse details,[5] Cannon's Petition generally tracks the assignments of error raised in his direct appeal and Cannon provides some detail in his Traverse. Thus, dismissal for failure to properly plead Ground Two may not be warranted. However, "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); s*ee also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

Generally, therefore, "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review." *Moreland v. Bradshaw,* 699 F.3d 908, 923 (6th Cir. 2012). Habeas courts presume that the Ohio state courts correctly interpret Ohio evidence law in their evidentiary rulings. *Small v. Brigano,* No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005.) Nonetheless, state-court evidentiary rulings may "rise to the level of due process violations [if] they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)); *see also Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) ("When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief."). Yet, "courts 'have defined the category of infractions that violate 'fundamental fairness' very

---

[5] For example, Ground Two, as pled in the Petition, provides no indication as to who the other witness referred to is or which statements were allegedly improper.

narrowly.'" *Bugh,* 329 F.3d at 512 (citing *Wright v. Dallman,* 999 F.2d 174, 178 (6th Cir. 1993)

(quoting *Dowling v. United States,* 493 U.S. 342, 352 (1990)).

In overruling Cannon's second assignment of error, the state court of appeals stated:

{¶ 14}Cannon's second assignment of error states:

> Defendant was denied a fair trial when the prosecutor cross-examined defendant concerning allged [sic] statements made by a witness who did not testify at trial.

{¶ 15} Under Evid.R. 611(B), "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility." "The limitation of * * * cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. Such exercise of discretion will not be disturbed in the absence of a clear showing of an abuse of discretion." *State v. Acre,* 6 Ohio St.3d 140, 145, 451 N.E.2d 802 (1983). However, "[i]t is improper for an attorney, under the pretext of putting a question to a witness, to put before a jury information that is not supported by the evidence." *State v. Smidi,* 88 Ohio App.3d 177, 183, 623 N.E.2d 655 (6th Dist.1993).

{¶ 16} In this instance, the state cross-examined Cannon regarding statements that he purportedly made to Brandy Wyatt, a person who did not testify at trial, with respect to him not being present at the scene of the murder in contravention of his trial testimony. Cannon argues that this line of questioning denied him a fair trial. We disagree.

{¶ 17} Cannon's reliance on *Smidi* is misplaced. *Smidi* involved a jury trial wherein a prosecutor implied by his questions that he possessed evidence that would rebut the defendant's testimony and improperly introduced technical information to the jury.

{¶ 18} In this case, the prosecutor's questioning of Cannon was not analogous to *Smidi.* First, this was a bench trial, which carries with it the presumption that only "relevant, material, and competent evidence" is considered absent a showing to the contrary. *State v. Vason,* 8th Dist. Cuyahoga No. 88069, 2007–Ohio–1599, ¶ 19, citing *State v. Baston,* 85 Ohio St.3d 418, 421, 709 N.E.2d 128 (1999). The prosecutor's questions, which concerned prior inconsistent statements made by Cannon, spoke directly to Cannon's credibility. Furthermore, this testimony was merely cumulative in light of the state's introduction of Cannon's contradictory statements to police and was, at most, harmless error. *State v. Chambers,* 8th Dist. Cuyahoga No. 99864, 2014–Ohio–390, ¶ 40 (error in the admission of evidence is harmless if there is no reasonable possibility that exclusion of the evidence would have affected the result of the trial). Cannon's second assignment of error is overruled.

*Cannon*, 2014 WL 5499291, * 3; *see also* Doc. 7-1, pp. 95-96, ¶¶ 14-18.

In his Traverse, Cannon summarily argues that the trial court's allowance of the prosecutor's cross-examination of Cannon regarding Ms. Wyatt's alleged statements resulted in a denial of a fair trial. Doc. 10, p. 8. He cites to *Berger v. United States*, 295 U.S. 278, 84 (1935) and *Douglas v. Alabama*, 380 U.S. 415 (1965) but provides no argument as to how the state court of appeals' decision was contrary to or an unreasonable application of either. Considering the cursory nature of Cannon's arguments, the Court may find any such argument waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal citations omitted).

Even if Cannon's argument were not deemed waived and he was able to show a constitutional violation occurred as a result of the prosecutor's cross-examination, he has failed to demonstrate an entitlement to federal habeas relief. As stated by the Supreme Court, in order to determine whether a petitioner is entitled to federal habeas relief based on a constitutional error, the reviewing federal habeas court must determine "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *see Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)). This is different from the harmless error review standard employed by reviewing courts on direct appeal. There, the court must determine if the error committed was "harmless beyond reasonable doubt." *See Chapman v. California*, 386 U.S. 18, 24 (1967). If a state court has reviewed such an error under the *Chapman* standard on direct appeal, a reviewing federal habeas court is not required to perform a formal application of both tests set out in *Chapman* and in *Brecht* as the

"latter obviously subsumes the former."  *See Fry v. Pliler*, 551 U.S. 112, 120 (2007).  However, this does not mean that a state court's harmlessness review under *Chapman* has no significance. *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015).  "When a *Chapman* decision is reviewed under AEDPA, a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable."  *Id.* at 2199 (quoting *Fry*, 551 U.S. at 119). Accordingly, a prisoner who seeks federal habeas relief must satisfy *Brecht,* and if the state court made a harmless error determination under *Chapman,* then the *Brecht* test subsumes the limitations imposed by AEDPA.  *Ayala*, 135 S. Ct. at 2199.

In analyzing Cannon's second assignment of error, the state court of appeals concluded that the testimony was cumulative and, at most, was harmless error.  Cannon has not argued nor demonstrated that the state court of appeals' harmlessness determination was contrary to or an unreasonable application of clearly established federal law.  Moreover, Cannon has not shown under the *Brecht* standard that the prosecutor's cross-examination "had substantial and injurious effect or influence in determining the . . . verdict."  *Brecht*, 507 U.S. 637-638.  Thus, even if Cannon were able to show a constitutional violation occurred as a result of the prosecutor's cross-examination, he would not be entitled to federal habeas relief.

Based on the foregoing, to the extent that Cannon seeks federal habeas relief based on an alleged error of state law, the undersigned recommends that the Court dismiss Ground Two as not cognizable.  And, to the extent that Cannon seeks relief based on an alleged denial of a fair trial based on the evidentiary rulings, the undersigned recommends that the Court deny Ground Two as without merit.

### 3.  Ground Three should be denied

#### GROUND THREE: Sixth Amendment

**Supporting Facts: Petitioner was denied effective assistance of counsel because of errors and omissions by defense counsel deprived petitioner of his right to effective assistance of counsel.  Moreover, counsel failed to file a motion to suppress evidence which would have been successful.**

As Respondent argued in response to Ground Two, Respondent argues that Ground Three should be dismissed as not adequately presented because Ground Three lacks sufficient specificity.  Doc. 7, pp. 28-29.  In the event that the Court does not dismiss Ground Three for failure to plead with sufficient specificity, Respondent argues that the state court of appeals' rejection of the assignment of error relating to ineffective assistance of counsel is entitled to AEDPA deference.  Doc. 7, pp. 30-34.

In his Traverse, Cannon does not respond to Respondent's claim that Ground Three is not sufficiently pled to warrant consideration on the merits.  Instead, Cannon proceeds to his merits argument, arguing that he was denied effective assistance of counsel on three bases.  Doc. 10, pp. 9-15.  First, he argues that defense counsel was ineffective because he failed to file a motion to suppress.  Doc. 10, pp. 9-11.  Second, he argues that defense counsel was ineffective because he failed to object to hearsay evidence.  Doc. 10, pp. 11-14.  Third, he argues that defense counsel was ineffective because he failed to object to prosecutorial misconduct.  Doc. 10, pp. 14-15.

Like Ground two, Ground Three, as presented in the Petition, provides sparse details.[6] However, as indicated above when addressing Ground Two, Cannon's Petition generally tracks the assignments of error raised in his direct appeal and Cannon provides some detail in his Traverse regarding the alleged ineffectiveness.  Thus, dismissal for failure to properly plead Ground Three may not be warranted.  Nevertheless, the undersigned has considered Ground

---

[6] For example, Ground Three, as pled in the Petition, provides no details as to the basis upon which trial counsel should have filed a motion to suppress and provides no additional details regarding the alleged ineffectiveness.

23

Three on the merits and concluded that federal habeas relief should not be granted on Ground Three.

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI.

In *Strickland v. Washington*, the Supreme Court set forth two requirements that must be shown in order to establish that an attorney was constitutionally ineffective. *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

First, a petitioner must demonstrate "that counsel's performance was deficient." "This requires showing that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*  A petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id*. at 688.  "Judicial scrutiny of counsel's performance must be highly deferential [because] [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.*  689.  Thus, in order to conduct a fair assessment of counsel's performance, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*  In light of "the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome

24

the presumption that, under the circumstances, the challenged action might be considered sound

trial strategy."  *Id.*

"Second, the defendant must show that the deficient performance prejudiced the

defense."  *Id.* at 687.  "This requires a showing that counsel's errors were so serious as to deprive

the defendant of a fair trial, a trial whose result is reliable."  *Id.*  "The defendant must show that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome."  *Id.* at 694.

When a state court reaches the merits of an ineffective-assistance of counsel claim,

federal habeas courts provide AEDPA deference to that adjudication under § 2254(d).  *Perkins v.*

*McKee*, 411 Fed. Appx. 822, 828 (6th Cir. 2011).  In *Harrington*, the Supreme Court emphasized

the double layer of deference that federal courts must give state courts in reviewing *Strickland*

claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner
> must show that the state court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for fairminded disagreement.
> . . . An ineffective-assistance claim can function as a way to escape rules of waiver
> and forfeiture and raise issues not presented at trial, and so the *Strickland* standard
> must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the
> integrity of the very adversary process the right to counsel is meant to serve. . . .
> Federal habeas courts must guard against the danger of equating unreasonableness
> under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies,
> the question is not whether counsel's actions were reasonable. The question is
> whether there is any reasonable argument that counsel satisfied *Strickland's*
> deferential standard.

*Perkins*, 411 Fed. Appx. at 828 (quoting *Harrington,* 131 S.Ct. 770, 786-788).

The state court of appeals considered Cannon's claims that his trial counsel was ineffective. In doing so, the court identified the proper federal constitutional standard for reviewing alleged ineffective assistance of counsel claims, stating:

{¶ 19} Cannon's third assignment of error states:

Defendant was denied effective assistance of counsel guaranteed by the Sixth Amendment.

{¶ 20} Cannon argues that because his attorney failed to file a motion to suppress, object to hearsay testimony and/or object to prosecutorial misconduct, he was denied effective assistance of counsel.

{¶ 21} In order to prevail on a claim of ineffective assistance of counsel, the appellant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at 143, 538 N.E.2d 373.

{¶ 22} In determining whether counsel's performance fell below an objective standard of reasonableness, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland* at 689. Because of the difficulties inherent in determining whether counsel rendered effective assistance in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. *Id.*

*Cannon*, 2014 WL 5499291, * 4; *see also* Doc. 7-1, pp. 96-97, ¶¶ 19-22.

The court then proceeded to consider each alleged instance of ineffective assistance of counsel raised by Cannon. With respect to Cannon's claim that his trial counsel was constitutionally ineffective for failing to file a motion to suppress, the court stated:

{¶ 23} First, Cannon argues that by failing to file a motion to suppress, he was denied effective assistance of counsel. We disagree.

{¶ 24} "Failing to file a motion to suppress does not constitute ineffective assistance of counsel per se. To establish ineffective assistance of counsel for

failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question." *State v. Brown,* 115 Ohio St.3d 55, 2007–Ohio–4837, 873 N.E.2d 858, ¶ 65.

{¶ 25} In this instance, Cannon argues that his attorney instructed Det. Diaz that no statement should be taken from Cannon upon his arrest. However, the record does not support this contention. To the contrary, the record reflects that Det. Diaz testified to advising Cannon of his constitutional rights in a video-recorded interview room prior to questioning him. We cannot say that the trial counsel's performance was deficient because there is no credible evidence to support the notion that a motion to suppress would have been successful.

*Cannon*, 2014 WL 5499291, * 4; *see also* Doc. 7-1, pp. 97-98, ¶¶ 23-25.

Cannon argues that his counsel should have filed a motion to suppress regarding anything that occurred following his arrest. In order to demonstrate ineffective assistance of counsel based on an alleged failure to litigate a Fourth Amendment claim, a petitioner "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). The state court of appeals considered whether Cannon's Fourth Amendment claim would have been successful had a motion to suppress been filed but found that there was "no credible evidence to support the notion that a motion to suppress would have been successful." Doc. 7-1, p. 98, ¶ 25. In ruling on Cannon's first assignment of error, the state court of appeals reviewed Supreme Court precedent relevant to silence and statements made both pre- and post-arrest and pre- and post-*Miranda* warning. Doc. 7-1, pp. 93-94, ¶¶ 11-12. As indicated by the state court of appeals, the Supreme Court in *Anderson v. Charles*, 447 U.S. 404, 408 (1980), stated that, "a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." *See* Doc. 7-1, p. 94, ¶ 12. As found by the state court of appeals, Detective Diaz presented testimony that

27

Cannon was advised of his constitutional rights when arrested. Doc. 7-1, p. 98, ¶ 25; Doc. 8-2, pp. 39-40. Cannon has not shown a basis upon which the statements Cannon made after being advised of his constitutional rights would have been suppressed and has not shown that the state court of appeals' determination that his trial counsel was not constitutionally ineffective for not filing a motion to suppress was contrary to or an unreasonable application of clearly established federal law. Cannon's reliance upon *Dunway v. New York*, 442 U.S. 200 (1979) is misplaced. In *Dunway*, the defendant was seized without probable cause. *Dunway*, 442 U.S. at 207 ("State concedes that the police lacked probable cause to arrest petitioner before his incriminating statement during interrogation."). In contrast, in Cannon's case, law enforcement had an arrest warrant for Cannon's arrest, which has not been challenged. Doc. 8-2, p. 39.

Based on the foregoing, the undersigned finds that the state court of appeals' determination regarding alleged ineffective assistance of trial counsel based on a failure to file a motion to suppress is entitled to deference under AEDPA.

With respect to Cannon's claim that his trial counsel was constitutionally ineffective for failing to object to hearsay testimony regarding whether the victim was right- or left-handed, the court stated:

{¶ 26} Cannon next argues that his attorney provided ineffective assistance of counsel by failing to object to hearsay testimony offered by Det. Diaz regarding whether Steel was right- or left-handed. The state does not dispute that the relevant testimony was hearsay but argues that Cannon cannot demonstrate a reasonable probability that, but for the failure to object to this testimony, the result of the trial would have been different. We agree.

{¶ 27} Cannon argues that Det. Diaz's testimony that Cannon was righthanded improperly undermined his self-defense claim that Steel fired a gun at him prior to his own shots because gunshot residue was discovered on Steel's *left* hand.

{¶ 28} We are unpersuaded by Cannon's argument. The record was rife with evidence suggesting that the gunshot residue on Steel's left hand was not from firing a firearm, but from being shot by Cannon. There was no trace metal found on either

of Steel's hands that would indicate he held a firearm. The gunshot residue was consistent with being shot at a range of one to four feet or by Steel grabbing his left leg after being shot there at close range. The eyewitnesses testified to seeing Cannon shoot Steel, but not to Steel shooting at Cannon. Therefore, we hold the failure to object to the hearsay statements was harmless in that there was no reasonable probability that, but for the error, the result of the trial would have been different.

*Cannon*, 2014 WL 5499291, * 4-5; *see also* Doc. 7-1, pp. 98-99, ¶¶ 26-28.

Cannon argues that he was deprived of a fair trial as a result of defense counsel's failure to object to the hearsay evidence.  As with many arguments presented in his Traverse, rather than address the AEDPA standard, Cannon recites arguments presented in his state court appellate brief.  In his Traverse, he does not specifically address how the state court of appeals' harmless error determination was contrary to or an unreasonable application of clearly established federal law.  For example, he references the trial court's comment that, "The fact that 'Mr. Steel was right-handed and that the gunshot residue on the left hand is not dispositive but is suggestive[]'" (Doc. 10, p. 12; Doc. 8-2, p. 170) but, fails to explain how this statement demonstrates that the state court of appeals' harmless error determination was unreasonable.  Following the trial court's comment highlighted by Cannon, the trial court proceeded to discuss other evidence, stating "[t]here was no evidence other than the defendant's own testimony that Mr. Steel had a weapon on him at the time . . . and as a matter of fact, Mr. Cannon . . . did not testify that he saw Mr. Steel shooting, or even that he saw him holding the weapon, but merely that he heard a shot, turned around, and fired.  To me that is very significant."  Doc. 8-2, p. 170.  Considering this and the other evidence considered by the state court of appeals when reaching its determination regarding the claim of ineffective assistance of counsel based on a failure to object to hearsay testimony, Cannon is unable to demonstrate that the state court of appeals' determination "that

there was no reasonable probability that, but for the error, the result of the trial would have been different[]" (Doc. 7-1, p. 99, ¶ 28) was contrary to or an unreasonable application of *Strickland*.

With respect to Cannon's claim that his trial counsel was constitutionally ineffective for failing to object to alleged prosecutorial misconduct, the court stated:

> {¶ 29} Finally, Cannon repackages his argument from his first assignment of error, asserting that the prosecution's statements concerning the failure of Cannon to present a self-defense version of events to police amounted to prosecutorial misconduct, and the failure of defense counsel to object to that misconduct amounts to ineffective assistance of counsel. We disagree.
>
> {¶ 30} The test for prosecutorial misconduct is whether the prosecutor's remarks or questions were improper, and if so, whether they prejudicially affected substantial rights of the accused. *State v. Hicks,* 194 Ohio App.3d 743, 2011–Ohio–3578, 957 N.E.2d 866, ¶ 30 (8th Dist.). A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. *State v. Apanovitch,* 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). The focus of that inquiry is on the fairness of the trial, not on the culpability of the prosecutor. *State v. Bey,* 85 Ohio St.3d 487, 496, 709 N.E.2d 484 (1999). "[G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, *there can be no such thing as an error-free, perfect trial,* and * * * the Constitution does not guarantee such a trial." *United States v. Hasting,* 461 U.S. 499, 508–509, 103 S.Ct. 1974 76 L.Ed.2d 96 (1983). (Emphasis added.)
>
> {¶ 31} Our focus upon review is whether the prosecutor's comments violated appellant's substantial rights, thereby depriving appellant of a fair trial such that there is a reasonable probability that, but for the prosecutor's misconduct, the result of the proceeding would have been different. *Hicks* at ¶ 30; *State v. Onunwor,* 8th Dist. Cuyahoga No. 93937, 2010–Ohio–5587, ¶ 42, citing *State v. Loza,* 71 Ohio St.3d 61, 641 N.E.2d 1082 (1994).
>
>> We note, however, that a defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt and the outcome of the case would have been the same regardless of evidence admitted erroneously. *Hicks* at 30, citing *State v. Williams,* 38 Ohio St.3d 346, 528 N.E.2d 910 (1988).
>
> {¶ 32} Pursuant to our analysis in this first assignment of error, we cannot say that there was prosecutorial misconduct nor that the failure to object to it was error by trial counsel, let alone a harmful one. Cannon's third assignment of error is overruled.

*Cannon*, 2014 WL 5499291, * 5-6; *see also* Doc. 7-1, pp. 99-100, ¶¶ 29-32.

As indicated, Cannon's final claim of alleged ineffective assistance of counsel was related to his first assignment of error.  Thus, the state court of appeals relied on its analysis of the first assignment of error in reaching its conclusion regarding Cannon's final claim in his third assignment of error.  The court's analysis of the first assignment of error was as follows:

{¶ 8} Cannon's first assignment of error states:

> Defendant was denied a fair trial when the prosecutor argues that the defendant was guilty because he failed to explain to the police his self-defense version.

{¶ 9} Cannon did not object to the testimony of Det. Raymond Diaz who testified that Cannon, when speaking with police after being arrested, did not present a self-defense explanation for his actions. The prosecution argued that Cannon's claim of self-defense lacked credibility due to his prior statements to police. Cannon's failure to object to the testimony of Diaz deprived the trial judge of any opportunity to rule on this issue. As a result, Cannon has waived all but plain error. *State v. Harris*, 8th Dist. Cuyahoga No. 99817, 2013–Ohio–5733, ¶ 13. An error constitutes plain error if it is obvious and affects a substantial right. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002–Ohio–2126, 767 N.E.2d 216, ¶ 108. Plain error exists only where it is clear that the verdict would have been otherwise but for the error. *State v. Skatzes*, 104 Ohio St.3d 195, 2004–Ohio–6391, 819 N.E.2d 215, ¶ 52. Notice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Phillips*, 74 Ohio St.3d 72, 83, 656 N.E.2d 643 (1995).

{¶ 10} Cannon asserts that the state's argument that Cannon did not present his self-defense claim to police amounts to impeaching the defendant by causing the trier of fact to draw an impermissible inference of guilt from his silence and therefore violated the rule of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). We disagree.

{¶ 11} Once a criminal defendant receives the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), it is improper for the state to impeach the defendant by causing the jury to draw an impermissible inference of guilt from the defendant's post-arrest silence. *Doyle* at 611. The rationale behind this rule is that *Miranda* warnings carry the state's "implicit assurance" that an arrestee's invocation of the Fifth Amendment right to remain silent will not later be used against him. *Wainwright v. Greenfield*, 474 U.S. 284, 290–291, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986). Because a defendant's post-

*Miranda* warning silence could be nothing more than an invocation of his right to silence, it would be fundamentally unfair to permit a breach of that assurance by allowing impeaching questions as to why the defendant failed to give an exculpatory account to the police after receiving the warnings. *Id.* at 295; *State v. Rogers,* 32 Ohio St.3d 70, 71, 512 N.E.2d 581 (1987).

{¶ 12} The rule in *Doyle* does not apply where "no governmental action induce[s] the defendant to remain silent" *Fletcher v. Weir,* 455 U.S. 603, 606, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). So pre-arrest silence may be used for impeachment purposes because the state has done nothing to induce the defendant to believe that he has a right to remain silent before arrest. *Jenkins v. Anderson,* 447 U.S. 231, 240, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980); *State v. Leach,* 102 Ohio St.3d 135, 2004–Ohio–2147, 807 N.E.2d 335, ¶ 20–22. The same applies to post-arrest, pre-*Miranda* warning, silence, *Fletcher* at 605–607, and any voluntary post-*Miranda* warning statements. *Anderson v. Charles,* 447 U.S. 404, 408–409, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980).

> The United States Supreme Court explained in *Anderson:*
>
> *Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.

*Id.* at 408.

{¶ 13} In this instance, the impeachment arguments made by the state at trial complied with the holdings of *Jenkins* and *Anderson.* Pursuant to *Jenkins,* the state's comments about the disconnect between Cannon's pre-arrest silence and his alibi defense were permissible. Cannon's claim that the state violated *Doyle* is similarly without merit because Cannon did not exercise his right to remain silent; he waived it. He spoke openly with police, initially telling them that he did not shoot the victim, was not near the scene of the crime and did not know the victim. Cannon's prior statements, which were inconsistent with other evidence, were being used to impeach him; Cannon's silence was not. Cannon's first assignment of error is overruled.

*Cannon*, 2014 WL 5499291, * 1-3; *see also* Doc. 7-1, pp. 92-95, ¶¶ 8-13.

As he did while pursuing his state court appeal, in his Traverse, Cannon continues to rely

on *Doyle v. Ohio*, 426 U.S. 610 (1976), to argue that it was improper for the prosecutor to

comment on Cannon's failure to explain his claim of self-defense to the police.  As the state court of appeals correctly explained, Cannon's reliance on *Doyle* is misplaced.  Cannon did not remain silent after being advised of his constitutional rights.  Rather, Cannon made statements and those statements were inconsistent with his testimony at trial.  Thus, as found by the state court of appeals, *Doyle* did not apply to bar the use of the inconsistent statements that Cannon made following *Miranda* warnings.  *See Anderson*, 447 U.S. at 408 ("*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.").  Moreover, *Doyle* did not bar use of Cannon's pre-arrest silence for impeachment since "no government action induced [him] to remain silent before arrest."  *See Jenkins v. Anderson*, 447 U.S. 231, 240 (1980).  Cannon's failure to speak occurred before he was taken into custody and prior to receiving *Miranda* warnings.  Thus, "the fundamental unfairness present in *Doyle*" was not present in Cannon's case.  *Id.*  As the Supreme Court held in *Jenkins*, "the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility" and "impeachment by use of prearrest silence does not violate the Fourteenth Amendment."[7]  *Id.* at 238, 240.

Considering the foregoing, the undersigned concludes that Cannon is unable to show that the state court of appeals' conclusion that there was no prosecutorial misconduct was contrary to or an unreasonable application of clearly established law.  And, therefore it cannot be said that the state court of appeals' determination that trial counsel was not constitutionally ineffective for

---

[7] As in *Jenkins*, in this case Cannon chose to testify at trial.  *Jenkins*, 447 U.S. at 235.

not objecting to the alleged prosecutorial misconduct was contrary to or an unreasonable application of clearly established federal law.

For the reasons discussed above, the undersigned recommends that the Court deny Ground Three.

### 4.  Ground Four should be dismissed and/or denied

**GROUND FOUR: Fourteenth Amendment**

**Supporting Facts: Petitioner was denied due process of law when his motion for judgment of acquittal was denied where there was insufficient evidence to permit a rational factfinder to return a verdict of guilty.  Moreover, even in viewing the evidence in the light most favorable to the prosecution, the judgment and verdict are against the manifest weight of the evidence.**

In his fourth ground for relief, Cannon argues that his convictions were not supported by sufficient evidence and also that his convictions were against the manifest weight of the evidence.  Each argument is addressed separately below.

### a.  Manifest weight of the evidence

"A 'manifest weight of evidence' claim, which is based on a state law concept that 'is both quantitatively and qualitatively different' from a constitutional due process sufficiency of evidence standard, raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding," *Brown v. Moore*, 2008 WL 4239160, *2, 8-9 (S.D. Ohio 2008) (footnote 2 omitted) (citing and relying on 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984)).  Accordingly, the undersigned recommends that the Court dismiss Cannon's manifest weight of the evidence claim in Ground Four as not cognizable on federal habeas review.

34

### b.  Sufficiency of the evidence

Unlike a manifest weight of the evidence claim, a sufficiency of the evidence claim is a cognizable claim on federal habeas review.  *See In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Under this standard, deference is due the jury's determination.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993).   Thus, in making a determination as to sufficiency of evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).   "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies.  *Coleman v. Johnson*, 566 U.S. 650, 651, 132 S.Ct. 2060, 182 L.Ed.2d 978 (2012) (reaffirming that sufficiency of the

evidence claims under *Jackson* "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference"). Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (citing 28 U.S.C. § 2254(d)(2)) (emphasis in original)*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

In rendering its decision affirming Cannon's convictions, the state court of appeals addressed the sufficiency claim, stating:

{¶ 33} Cannon's fourth assignment of error states:

> Defendant was denied due process of law when the court overruled his motions for judgment of acquittal.

{¶ 34} "[T]he test an appellate court must apply when reviewing a challenge based on a denial of a motion for acquittal is the same challenge based on the sufficiency of the evidence to support a conviction." *State v. Thompson*, 127 Ohio App.3d 511, 525, 713 N.E.2d 456 (8th Dist.1998). This court has said, in evaluating a sufficiency of evidence argument:

> [c]ourts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. The weight and credibility of the evidence are left to the trier of fact.

*State v. Jackson*, 8th Dist. Cuyahoga No. 86542, 2006–Ohio–1938, ¶ 23.

{¶ 35} Cannon was convicted of murder in violation of R.C. 2903.02 with a three-year firearm specification pursuant to R.C. 2941.145(A) and having a weapon while under disability in violation of R.C. 2923.13(A)(3). R.C. 2903.02(A) prohibits purposely causing the death of another. R.C. 2923.13(A)(3) prohibits firearm possession by anyone with a current indictment or prior conviction of a felony drug offense. R.C. 2941.145 imposes an additional three-year prison term when "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the

firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

{¶ 36} Cannon fails to present a specific sufficiency argument and instead attacks the credibility of the eyewitnesses to the shooting. Cannon's argument is without merit. Two eyewitnesses, Demarco Parker and Brittany Baker–Terrell, testified that they witnessed Cannon shoot Steel. Cannon himself testified to shooting Steel. Three witnesses and Cannon himself testified to an argument over a dice game between Cannon and Steel taking place prior to the shooting. Other witnesses who were in the area testified that they heard three or four gun shots during the time of the incident. Investigators found four shell casings at the scene of the crime, all the same type and caliber, indicating that they all came from the same firearm. Dr. Armstrong, a pathologist from the Cuyahoga County medical examiner's office, testified that Steel died as a result of four gunshot wounds. Four .40 caliber Smith & Wesson shell casings were recovered from the scene. Gunshot residue on Steel's body was consistent with being shot from a distance of one to four feet, which was also consistent with the testimony of Demarco Parker.

{¶ 37} In regard to Cannon's conviction for having a weapon while under disability, Cannon stipulated to a prior felony drug trafficking offense, demonstrating disability under R.C. 2913.13(A)(3), and Cannon himself admitted to possessing and using a firearm to shoot Steel.

{¶ 38} Cannon's fourth assignment of error is overruled.

*Cannon*, 2014 WL 5499291, * 6-7; *see also* Doc. 7-1, pp. 100-102, ¶¶ 33-38.

In his Petition, Cannon summarily argues that his convictions were not supported by sufficient evidence.  *See* Doc. 1, p. 10 (Supporting Facts: "Petitioner was denied due process of law when his motion for judgment of acquittal was denied where there was insufficient evidence to permit a rational factfinder to return a guilty verdict.").  In his Traverse, Cannon argues that the evidence was insufficient to convict him of murder[8] because the testimony of witnesses was not credible and/or was contradicted by other evidence and he points to evidence presented after trial indicating that the main witness had committed perjury.  Doc. 10, pp. 15-19.  More

---

[8] Cannon does not present any argument that his conviction for having weapons under disability was unsupported by sufficient evidence.  Accordingly, to the extent he seeks federal habeas relief on that basis, the Court should find any such claim waived.  *See McPherson*, 125 F.3d at 995–996.

specifically, Cannon contends that the testimony of witness Brittany Baker-Terrell was less than satisfactory, arguing that, during her trial testimony, Ms. Baker-Terrell was unable to recall what had occurred with any degree of certainty and "her testimony was nothing more than what she was told by others."  Doc. 10, pp. 15-17.  Cannon also argues that witness DeMarco Parker's testimony did "not add anything . . . [because] [h]is testimony was a series of inconsistencies which were contradicted by the evidence [and] Parker had smoked marijuana that morning."  Doc. 10, pp. 17-18.  Further, Cannon contends Mr. Parker's testimony should be given no weight because it was "self-serving [] [d]ue to the fact that he deemed [the victim] to be like one of his brothers[.]"  Doc. 10, p. 18.

Cannon's arguments are focused on the credibility of the witnesses.  However, as discussed above, in making a determination as to sufficiency of evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [trier of fact]."  *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).  Furthermore, the trial judge, who served as the trier of fact, considered and weighed all the evidence and did not find Cannon's claim of self-defense credible and it is not for this Court to substitute its judgment for that of the trier of fact. *Id.*

To the extent that Cannon's sufficiency of the evidence claim hinges on the alleged new evidence, i.e., the affidavit of Mr. Parker, that evidence was presented to the trial court in a post-conviction proceeding.  Since that evidence was not before the trier of fact when determining whether Cannon was guilty beyond a reasonable doubt, it is not for this Court's consideration in considering the merits of Cannon's sufficiency of the evidence claim.  *See Cullen v. Pinholster,* 563 U.S. 170, 182 (2011) ("review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").  Additionally, as discussed below,

Cannon's challenge to the post-conviction proceedings involving the alleged new evidence is not cognizable on federal habeas review.  *See* Section III.C.7.

Furthermore, as discussed above, on federal habeas review, two layers of deference apply.  Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (citing 28 U.S.C. § 2254(d)(2)) (emphasis in original)*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). As indicated by the state court of appeals, while Cannon attacked the credibility of the witnesses, Cannon himself admitted to shooting the victim.  Doc. 7-1, p. 102, ¶ 36.  Also, witnesses testified to hearing three or four shots at the time of the incident; a pathologist testified that the victim died from four gunshot wounds; and four shell casings, all the same type and caliber, were recovered from the scene, indicating that the four shell casings came from the same firearm.  Doc. 7-1, p. 102, ¶ 36.  Based on this and other evidence presented at trial, Cannon has not shown that it was unreasonable for the state court of appeals to conclude that there was sufficient evidence to convict Cannon of murder, which prohibits purposely causing the death of another.

Based on the foregoing, the undersigned concludes that federal habeas relief is not warranted based on Cannon's sufficiency of the evidence claim and, therefore, recommends that the Court deny Cannon's sufficiency of the evidence claim in Ground Four.

### 5.  Ground Five should be dismissed

**GROUND FIVE: Sixth and Fourteenth Amendment[]**

**Supporting Facts: Petitioner, who was convicted by the court was denied his Sixth Amendment rights when he was sentenced to consecutive sentences based on judicial factfinding.**

In his fifth ground for relief, Cannon contends that his constitutional rights were violated when the trial judge, who also served as trier of fact in his case, imposed consecutive sentences based on judicial fact finding.  In his Traverse, Cannon argues that "the imposition of [his] sentence violated petitioner's constitutional right under the Sixth Amendment.  Blakely v. Washington, 542 U.S. 296 (2004); Apprendi v. New Jersey, 530 U.S. 466 (2000)." Doc. 10, p. 25.

Cannon's argument is without merit.  The Supreme Court, in *Oregon v. Ice*, 555 U.S. 160 (2009), considered the scope of the 6th Amendment's jury-trial guarantee as interpreted by *Apprendi* and *Blakely* and concluded that a trial court's imposition of consecutive sentences does not implicate federal constitutional concerns.  *See Oregon v. Ice*, 555 U.S. 160, 171 (2009); *see also Wilkins v. Warden, Chillicothe Correctional Inst.*, 2010 WL 5795505, * 19 (S.D. Ohio Sept. 2, 2010), *report and recommendation adopted*, 2011 WL 549916 (S.D. Ohio Feb. 8, 2011) (indicating that "the Supreme Court has made it clear that consecutive sentences may be imposed without implicating any concerns under the Sixth Amendment.") (citing *Ice*, 555 U.S. 160); *see also Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (concluding that a petitioner's challenge to the aggregation of several sentences involved a matter of state law and was not cognizable in the federal habeas proceeding).

Cannon waived his right to a jury.  Additionally, as found by the Supreme Court in *Ice*, a state statute requiring judges to find certain facts prior to imposing consecutive rather than concurrent sentences does not run afoul of a defendant's 6th Amendment jury-trial guarantee. *Ice*, 555 U.S. at 163-164, 171.  Accordingly, the undersigned recommends that the Court dismiss Cannon's fifth ground for relief as not cognizable on federal habeas review.

6. **Ground Six should be dismissed**

**GROUND SIX: Fifth and Fourteenth Amendment**

**Supporting Facts: Petitioner was subjected to unconstitutional multiple punishments when the court failed to merge the firearm specification with the offense of having a weapon under disability, which involves the same gun or firearm.**

In his sixth ground for relief, Cannon argues that his sentence is unconstitutional because the trial court imposed separate and consecutive sentences for the firearm specification and the charge of having a weapon under disability.

"The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states that 'no person . . . shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . .' The clause was incorporated against the states through the enactment of the Fourteenth Amendment." *Person v. Sheets*, 527 Fed. Appx. 419, 423 (6th Cir. 2013) (citing *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)). "The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" *Duncan v. Sheldon*, 2014 WL 185882, * 31 (N.D. Ohio Jan. 15, 2014) (quoting *Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013) (internal citations omitted)). "In contrast to most habeas claims, which are based entirely on federal constitutional rights, a claim under the Double Jeopardy Clause requires analysis of state law; because the state legislature has the authority to define and punish crimes, the definition of multiple punishments is dependent on the legislative intent of the state government." *Person*, 527 Fed. Appx. at 423 (citing *Volpe*, 708 F.3dd at 697). Thus, "as long as the state court has concluded that the legislature intended cumulative punishment, this court is bound by that

41

conclusion." *Duncan*, 2014 WL 185882, * 32 (quoting *Palmer v. Haviland*, 273 Fed. Appx. 480, * 6 (6th Cir. 2008) (unpublished).

Here, the state court of appeals considered Cannon's argument that having a weapon under disability is an allied offense of similar import to a firearm specification and rejected the argument.  *See* Doc. 7-1, p. 109, ¶ 58.  The state court of appeals relied upon a number of other state court decisions that had also rejected the exact same arguments.  One of those cases, *State v. Blakenship*, 102 Ohio App. 3d 534 (Ohio App. Ct. Apr. 17, 1995), concluded that Ohio's allied offense statute, O.R.C. § 2941.25, did not apply because, only enhanced punishment, not conviction of a separate offense involving identical conduct, was involved with a firearm specification.  *Blankenship*, 102 Ohio App. 3d at 547.  Thus, the court therein concluded that "[a] firearm specification is not a separate offense and thus [could not] be an allied offense of similar import for purposes of R.C. 2941.25 [and] . . . the trial court did not err in failing to merge the firearm specifications with the underlying weapons charges under R.C. 2941.25"  *Id.*

In light of the state court's interpretation of its sentencing laws, which, as discussed above, this Court is bound by, Cannon cannot demonstrate that he was subjected to multiple punishments for the same offense and he is unable to establish a violation of his double jeopardy rights.  Accordingly, the undersigned recommends that the Court dismiss Cannon's sixth ground for relief as failing to establish a claim for federal habeas relief under § 2254.

**7.  Ground Seven should be dismissed**

**GROUND SEVEN:[9]**

**Supporting Facts: Petitioner was denied due process of law when he offered proof of actual innocence based on newly discovered evidence which was summarily denied by the trial court and the court of appeals[.]**

---

[9] Ground Seven is not labeled in the Petition.  *See* Doc. 1, p. 14.

In his seventh ground for relief, Cannon seeks to challenge the state court's denial of his motion for leave to file a motion for new trial without a hearing, arguing that said denial was an abuse of process and denial of due process.  Doc. 1, p. 14, Doc. 10, pp. 20-24.  Cannon relies on various state law cases to support his claim that the trial court erred in denying his motion for leave to file a motion for new trial.  Doc. 10, pp. 19-24.   He contends that he presented newly discovered evidence which entitled him to a hearing and argues that he can demonstrate a claim of actual innocence.  Doc. 10, pp. 19-24.  As discussed below, Cannon's claim is not cognizable on federal habeas review.

The Sixth Circuit has held that claims challenging state post-conviction proceedings are not subject to review under the federal habeas corpus statute, 28 U.S.C. § 2254.  *Kirby v. Dutton*, 794 F.2d 245, 246-247 (6th Cir. 1986).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Id.* at 246 (quoting *Preiser v. Rodriquez*, 411 U.S. 475, 484 (1973)).  Since Cannon's challenge is an attack on the procedure during state collateral proceedings, the claim asserted in Ground Seven is not cognizable on federal habeas review. *Kirby*, 794 F.2d 245; *see also Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (discussing and following *Kirby*); *O'Neal v. Kelly*, 2013 WL 2443775, * 4 (N.D. Ohio June 4, 2013) (dismissing as not cognizable federal habeas grounds for relief that alleged constitutional error in state post-conviction proceedings).

Furthermore, although *Schulp v. Delo*, 513 U.S. 298, 327 (1995) stands for the principle that a claim of actual innocence may entitle a habeas petitioner to have a procedurally defaulted claim heard, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional

claim considered on the merits.'  *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *see also Wright v. Stegall*, 247 Fed. Appx. 709, * 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that petitioner's claim is not entitled to relief under available Supreme Court precedent.").  And, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Based on the foregoing, the undersigned recommends that Court dismiss Cannon's seventh ground for relief as not cognizable on federal habeas review.

## IV.    Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS and/or DENY** Cannon's Petition (Doc. 1).  Grounds One, Five, Six and Seven should be dismissed.  Ground Two and Four should be dismissed and/or denied.  Ground Three should be denied.

Dated: February 20, 2018                                 Kathleen B. Burke
                                                          United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the

44

right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).